UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALICIA D. SANDERS, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:15-CV-2207-G |
| THE UNITED STATES POSTAL ) | |
| SERVICES OFFICE OF PERSONNEL ) | |
| MANAGEMENT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant's amended motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) or, alternatively, for summary judgment (docket entry 63). For the reasons stated below, the motion is granted.

I. BACKGROUND

On May 30, 1978, Linda Faye Chalmers ("Chalmers") began to work for the United States Postal Service. Plaintiffs' Third Amended Original Complaint ("Complaint") ¶ 6 (docket entry 60). Chalmers died on March 18, 2011. *Id.* ¶ 27; Appendix to Brief in Support for Defendant's Amended Motion to Dismiss, or, Alternatively, for Summary Judgment ("Defendant's Appx.") at 0082 (docket entry

65). The plaintiffs Alicia D. Sanders ("Alicia Sanders"), Quincy D. Sanders ("Quincy Sanders"), and Veronica M. Sanders ("Veronica Sanders") are Chalmers's children. Complaint ¶ 7.

The United States Office of Personnel Management ("OPM") entered into a contract for life insurance on behalf of Chalmers with Metropolitan Life Insurance Company ("MetLife"), and OPM and Chalmers entered into a contract for pension. *Id.* ¶ 54. The life insurance contract was between OPM and MetLife.[1] Defendant's Brief in Support of Defendant's Amended Motion to Dismiss or, Alternatively, for Summary Judgment ("Motion") at 13 (docket entry 64). MetLife insures individuals covered under the Federal Employees' Group Life Insurance ("FEGLI") program pursuant to the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA"), 5 U.S.C. §§ 8701-16. *Id*. at 10-11, 13. MetLife's Office of Federal Employees' Group Life Insurance ("OFEGLI") administers claims under the FEGLI program. *Id*. at 11; *see also* 5 U.S.C. § 8709(b).

The FEGLI program handbook included, in pertinent part, the following provisions.

> **Invalid and Unacceptable Designations**
>
> These are some of the things that <u>may</u> cause a designation to be invalid or unacceptable:

---

[1]   The plaintiffs have produced no evidence that a valid contract existed between OPM and Chalmers.

- Your employing office does not receive your designation of beneficiary until after you die.

\*\*\*

- The amounts you designated do not add up to 100 Percent (or 1.0, if you designated fractions).

\*\*\*

**Payment When Designation Is Invalid**

OFEGLI will make payment in accordance with your last valid designation of beneficiary (or according to the order of precedence, if there is no designation) when your latest designation form:

\*\*\*

- Was not received by your employing office or retirement system before your death . . . .

Defendant's Appx. at 0183-0186 (emphasis in the original).

After an insured employee's death, OPM has a duty to transmit pertinent forms, including an Agency Certification of Insurance Status and all designations of beneficiary to the OFEGLI, which in turn adjudicates claims. Motion at 11, 20. The FEGLIA regulates the payment of policy proceeds as follows:

(a) [T]he amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office. . . . For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect. . . .

5 U.S.C. § 8705; *see also* Defendant's Appx. at 0186.

At various times, Chalmers changed her life insurance beneficiary designation. For example, on November 13, 2002, Chalmers signed a Designation of Beneficiary form which divided her life insurance proceeds equally between her daughters Alicia Sanders and Veronica Sanders, her son Quincy Sanders, her mother Alma R. Chalmers ("Alma Chalmers"), and her sister Jo Ann (Chalmers) Booker ("Booker"). Defendant's Appx. at 0057. On June 28, 2004, Chalmers signed a new Designation of Beneficiary form and divided her life insurance proceeds equally between Booker and Alma Chalmers. *Id.* at 0056; Motion at 7. On May 30, 2009, Chalmers submitted a new Designation of Beneficiary form which named Booker as the sole beneficiary of her life insurance policy. Defendant's Appx. at 0055.

In 2010, Chalmers moved in with Quincy Sanders and gave him power of attorney over her affairs. Appendix in Support of Plaintiff's [sic] Response to Defendant's Motion for Summary Judgment at 000101 (docket entry 67); Complaint

¶ 21. That year, Quincy Chalmers prepared a new Designation of Beneficiary form ("the Improper Division Form") for Chalmers's signature. Complaint ¶ 24. The Improper Division Form named Quincy Sanders, Veronica Sanders, and Alicia Sanders as beneficiaries and divided the proceeds into 33.3% each with a vinculum, or bar, over the final 3. Motion at 4; Defendant's Appx. at 0018-0019. OPM returned the Improper Division Form to Quincy Sanders because "OPM considered the form to be invalid because the designation of the insurance did not add up to 100% as required" and sent him the Improper Division Form along with a new form with accompanying instructions to include a division of the life insurance proceeds which totaled 100%. Reply in Support of Defendant's Amended Motion to Dismiss or, Alternatively, for Summary Judgment ("Reply") at 3 (docket entry 70); Motion at 5; Defendant's Appx. at 0019-0020. Thereafter, Quincy Sanders destroyed the original Improper Division Form, and he prepared a new Designation of Beneficiary form with a clear 100% division of the life insurance proceeds (*i.e.*, 50% to Quincy Sanders, 25% to Veronica Sanders, 25% to Alicia Sanders). Defendant's Appx. at 0023, 0054; Motion at 5. Though Chalmers signed this form on October 29, 2010, Quincy Sanders did not mail the form to OPM until the day Chalmers died in March of 2011. Reply at 4; *see also* Defendant's Appx. at 0023, 0025, 0054. OPM received the form on March 18, 2011. Defendant's Appx. at 0082. Quincy Sanders stated that he did not mail the revised form because he did not have a stamp so he "put it

away then it was forgotten about." *Id*. at 0025.  Thus, because OPM received the revised form after Chalmers's death, Quincy Sanders did not timely submit the revised form.  According to OPM, "[i]t was [this] failure to submit a revised designation of beneficiary form for almost six months after it was executed that caused Quincy [Sanders] and his siblings to not be named as the beneficiaries of their mother's life insurance."  Motion at 21.

In mid-2010, Quincy Sanders first contacted OPM about possible fraud or undue influence with respect to Chalmers's retirement benefits but did not mention her life insurance benefits.  Motion at 7; Defendant's Appx. at 0018-0063, 0065-0066.  After Chalmers's death, Veronica Sanders contacted OPM by phone and in writing after OPM informed her that she was not Chalmers's life insurance beneficiary.  Motion at 7; Defendant's Appx. at 0116, 0118, 0119-0121.  In a letter to OPM dated March 13, 2014, Veronica Sanders reported that she suspected fraud by Booker with respect to Chalmers's life insurance and retirement proceeds, although she had no conclusive proof of fraud when she sent the letter to OPM.  Defendant's Appx. at 0087-0088, 0124-0125; Reply at 4; Motion at 7-8.  To date, Veronica Sanders knows of no formal finding of fraud or misconduct by Booker.  Defendant's Appx. at 0125.

Chalmers designated Booker as the representative payee for her retirement benefits.  Motion at 6.  Quincy Chalmers contacted OPM to report that Booker had

committed fraud and asked that OPM designate him as the payee. *Id.* OPM denied Quincy Sanders's request. *Id.*

On May 5, 2015, the plaintiff Administrator of the Estate of Linda Faye Chalmers commenced this action against OPM, Texas residents Booker, Adrian D. Booker, Donna C. Ross, Nicole Smith, Texas corporation Jenkins Agency, Inc., Texas limited liability company Stratovare, LLC, and California resident Dameon Booker in the Probate Court No. 3 of Dallas County, Texas ("probate court"). Notice of Removal ¶¶ 1, 2 (docket entry 1); *see also* Plaintiff's Original Complaint, *attached to* Notice of Removal as Exhibit 34. On July 1, 2015, OPM timely removed this action pursuant to 28 U.S.C. § 1346(b)(1). Notice of Removal ¶ 3. On July 13, 2015, this court remanded the claims against Booker, Adrian D. Booker, Donna C. Ross, Nicole Smith, Jenkins Agency, Inc., Stratovare, LLC, and Dameon Booker to the probate court pursuant to 28 U.S.C. § 1367(c)(2). *See* Order (docket entry 8). In their third amended complaint, the plaintiffs assert claims of breach of contract and negligence against OPM.[2] *See generally* Complaint.

The plaintiffs contend that Chalmers fulfilled her duty to keep OPM apprised of her current beneficiaries, but OPM breached its duty to forward Chalmers's

---

[2] In its third amended complaint, the plaintiff Administrator of the Estate of Linda Faye Chalmers changed the caption of this case from the Administrator of the Estate of Linda Faye Chalmers to the names of the putative beneficiaries Alicia Sanders, Quincy Sanders, and Veronica Sanders without leave of court. The court permits this substitution of parties.

updated beneficiary information to MetLife, and as a result MetLife failed to fulfill its duty to pay Chalmers's proper beneficiaries. Complaint ¶¶ 54, 55. Specifically, the plaintiffs assert that OPM did not forward MetLife the Improper Division Form and notice of possible fraud. *Id.* ¶¶ 56, 57. Additionally, the plaintiffs assert that OPM breached its duty to maintain files and forward updated information about Chalmers's employee file. *Id.* ¶ 61. According to the plaintiffs, OPM negligently misplaced, destroyed, or failed to maintain an updated Designation of Beneficiary form, negligently failed to update annuitant's beneficiary form, and negligently failed to forward or investigate evidence of fraud. *Id.* ¶ 60. Conversely, OPM contends that it did not owe a legal duty to the plaintiffs and, even if it be assumed *arguendo* that OPM did owe a duty, a violation of that duty was not the proximate cause of any harm to the plaintiffs. Motion at 1-2.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.[3]  "[T]he substantive law

---

[3] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190,
(continued...)

will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323-24. To carry this burden, the opponents must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, they must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. All of the evidence must be viewed, however, in a light most favorable to the motion's opponents. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

According to the Fifth Circuit, "[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on [FEGLIA] . . . [and] . . . [i]t is clear, based on [5 U.S.C.]§ 8715, that the United States has consented to be sued for any breach of legal duty owed by it under

---

[3](...continued)
1197 (5th Cir. 1986).

FEGLIA." *Metropolitan Life Insurance Company v. Atkins*, 225 F.3d 510, 513 (5th Cir. 2000). In *Atkins*, a plaintiff brought suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and FEGLIA after a federal personnel clerk lost or misfiled a properly completed Designation of Beneficiary form. *Id.* at 511-12. The court held that "[though] the personnel clerk had no duty to ensure that the forms were properly completed, we conclude that the United States, through the personnel clerk, has a duty to maintain the designation of beneficiary forms turned over to its care as a part of its responsibilities under FEGLIA." *Id.* at 514. Unlike *Atkins*, however, the plaintiffs' alleged injuries in the instant case did not rise from "the negligent performance of an operational task" such as record-keeping. See *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1104, __ U.S. __ (2012).

The plaintiffs failed to produce evidence that OPM breached any legal duty owed to them or that any negligence by OPM in fact caused their injuries. At the time of Chalmers's death, OPM had a properly executed Designation of Beneficiary form on file which named Booker as the sole beneficiary of Chalmers's life insurance policy, *see* Defendant's Appx. at 0055, and OPM had no reason or legal duty to investigate whether Booker was properly listed on the form. Additionally, the plaintiffs have not demonstrated that OPM breached any legal duty owed to them when OPM returned the Improper Division Form to Quincy Sanders without

maintaining a copy of the form after OPM deemed it invalid under FEGLI program guidelines. After receiving the new form, Quincy Sanders failed to submit it to OPM in a timely manner. Lastly, the plaintiffs produced no authority that OPM had a legal duty to take any actions in response to family members' conclusory statements regarding fraud made after Chalmers's death. Because the plaintiffs failed to assert a duty owed by OPM under FEGLIA, the government's sovereign immunity is not waived. Accordingly, summary judgment for the defendant on that claim is granted.

### B.  Standard for Rule 12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994); *Owen Equipment and Erection Company v. Kroger*, 437 U.S. 365, 374 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2; see also *Kokkonen*, 511 U.S. at 377. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Moreover, a party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays*, 515 U.S. 737, 743 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the court's jurisdiction to prove that

jurisdiction is proper. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995), *cert. denied*, 516 U.S. 1071.

### 1. *FTCA*

It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001) ("Generally, the United States enjoys sovereign immunity from suit unless it has specifically waived immunity."). "Congress enacted the FTCA as a limited waiver of the sovereign immunity of the United States." *Johnston v. United States*, 85 F.3d 217, 218-19 (5th Cir. 1996).

"The FTCA gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)). Despite the apparently broad reach of FTCA jurisdiction, the FTCA specifically excepts various categories of claims from the waiver of immunity. See *Ali*

*v. Federal Bureau of Prisons*, 552 U.S. 214, 218 (2008) (citing 28 U.S.C. § 2680(a)(n). The provisions of 28 U.S.C. § 1346(b) shall not apply if one of the exceptions applies, regardless of whether the claim is valid under state law. *United States v. Neustadt*, 366 U.S. 696, 705 n. 15(1961). Additionally, the exceptions must be strictly construed in favor of the government. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Furthermore, The FEGLIA concludes a preemption provision which provides as follows.

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1)(1994).

Even if the FEGLIA preemption provision were inapplicable to the instant case, the plaintiffs do not specifically allege any applicable waiver of sovereign immunity outside the FTCA. As discussed *supra*, OPM did not breach a duty owed to the plaintiffs, and any negligence alleged by the plaintiffs did not cause their injuries.[4]  See *Life Partners*, 650 F.3d at 1032.

---

    [4]    Even if it is assumed *arguendo* that OPM was negligent, it appears that the plaintiffs' FTCA claim is barred by statute, thereby depriving this court of jurisdiction. Under the FTCA, a claimant must file an administrative claim within

(continued...)

2. *Retirement Benefits*

The plaintiffs also generally allege that OPM breached a duty owed with respect to Chalmers's retirement benefits under the Federal Employees Retirement System ("FERS") regarding designation of the proper payee. Complaint ¶ 43. OPM asserts that this court lacks subject matter jurisdiction over any claims related to Chalmers's retirement benefits. Motion at 21. Specifically, OPM contends that dispute over OPM's review of a claim arising under FERS must first be appealed to the Merit Systems Protection Board ("MSPB"), and thereafter jurisdiction is vested exclusively in the Federal Circuit. *Id*. at 21-24. The court agrees. *See* 5 U.S.C. §§ 7701(a), 7703(b)(1), 5 U.S.C. § 8461(e)(1), 28 U.S.C. § 1295(a)(9); see also *Soroka v. Office of Personnel Management*, 557 Fed. Appx. 983, 984 (Fed. Cir. 2014) (per curiam).

The plaintiffs bear the burden of establishing the subject matter jurisdiction of this court. See *Hays*, 515 U.S. at 743. Moreover, "[b]ecause there is no presumption in favor of federal court jurisdiction and that jurisdiction is limited," the plaintiffs must affirmatively show the basis for jurisdiction. *Kirkland Masonry, Inc. v. Commissioner of Internal Revenue*, 614 F.2d 532, 533 (5th Cir. 1980). The plaintiffs have provided no evidence that they filed an appeal seeking review of OPM's decision

---

[4](...continued)
two years and file suit within six months of the claim's denial. 28 U.S.C. § 2401(b).

regarding Chalmers's retirement benefits with the MSPB.  Moreover, the plaintiffs failed to respond to OPM's challenges to this court's jurisdiction.  Thus, the plaintiffs have failed to meet their burden of establishing that this court possesses subject matter jurisdiction over Chalmers's retirement benefit claims.  See *Hays*, 515 U.S. at 743; *Kirkland Masonry, Inc.*, 614 F.2d at 533.  Accordingly, OPM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.

### III.  CONCLUSION

For the reasons discussed, defendant's amended motion to dismiss or, alternatively, for summary judgment is **GRANTED**.  Judgment will be entered dismissing the plaintiffs' claims in this case.

**SO ORDERED.**

March 6, 2017.

_____
**A. JOE FISH**
**Senior United States District Judge**